Rosenberry, C. J.
 

 The plaintiff, a common motor carrier, filed with the commission an application to' amend its common motor-carrier certificate so as to authorize it to operate on United States Highway 15 between Milwaukee and East Troy and other points not material here. Its. application to operate between Milwaukee and East Troy was denied on the 18th day of December, 1942. There was a rehearing and on April 28, 1943, the order of December 18, 1942, was affirmed.
 

 
 *314
 
 A hearing was held in Madison on August 31, 1942, and on September 2, 1942, in the courthouse in Milwaukee. The hearing was closed on September 2, 1942. No evidence was taken thereafter. At the close of the taking of the testimony, the examiner asked, "Is there any desire to file briefs ?” whereupon counsel for plaintiff asked permission to file a brief fifteen days after receipt of the transcript. Ten days after the service of plaintiff’s brief, defendants were to serve and file their brief. The order was made one hundred seven days after the conclusion of the hearing of evidence.
 

 Sec. 194.23 (4), Stats., provides: “The commission shall make its finding and issue its order on any application within sixty days after completion of the hearing on said petition. In the event of the failure to so make its finding and issue its order, said petition shall be deemed to be granted except in cases where the applicant has in writing agreed after the hearing to a further extension of time provided to make its finding and to issue its order.”
 

 In this case no stipulation in writing was made. The plaintiff contends that by operation of the statute its application was granted sixty days after September 2, 1942. It is the contention of the commission that the proceeding upon the application is quasi-judicial in character; that such hearing must be held in such manner as to deprive no^ interested party thereto of his right to be afforded the essential protections of a common-law hearing; that those rights include the right to be heard by counsel upon the probative force of the evidence adduced by both sides and upon the law applicable thereto
 
 (State ex rel. Arnold v. Common Council
 
 (1914), 157 Wis. 505, 511, 147 N. W. 50) ; that if these rights be denied a party, he does not have the substantiate of a common-law hearing.
 

 The plaintiff contends that the word “hearing” as used in sec. 194.23 (4), Stats., refers to the taking of testimony and that when that process is completed, the hearing is ended. It
 
 *315
 
 is apparent from the contentions of the commission and the arguments made and the authorities cited in support of them that it is its view that “hearing” is used in sec. 194.23 (4) in the same sense in which it was used in
 
 State ex rel. Arnold v. Common Council, supra.
 
 That case arose under the charter of the city of Milwaukee which provided for the removal of an officer for cause. A city ordinance required that the accused be given notice and a hearing, and the right to produce witnesses, manifestly a quasi-judicial proceeding.
 

 The power exercised by the Public Service Commission under secs. 194.04, 194.23, Stats., is legislative and not judicial in character. By a consideration of the terms of the section that becomes apparent for it is provided that in the event of the failure to make findings and issue an order within the time specified, the petition shall be deemed to be granted. If the power exercised were not legislative in character, certainly the legislature could not give such effect to a failure of the commission to act. Being legislative in character, a hearing which satisfies the requirements for a legislative hearing is sufficient, the hearing being in no respect whatever, judicial or quasi-judicial. Sec. 194.14 provides that—
 

 “In exercising the powers conferred by this chapter . . . the motor vehicle department shall be guided as to the procedure by the provisions of chapters 195 and 196 in so far as the same are applicable and not inconsistent with the specific requirements of this chapter. ...”
 

 Under chs. 195 and 196, Stats., the Public Service Commission exercises legislative powers and in other respects exercises judicial or qMtm-judicial powers so that we are not aided in this case by the references contained in sec. 194.14, Stats.
 

 Unless some care is exercised to preserve the distinction between legislative and judicial power when exercised by administrative bodies, the division of the government’ into coordinate departments will become meaningless. In the statutes
 
 *316
 
 referred to both legislative power and judicial or quasi-judicial power are exercised by the same body and the procedure for the exercise of the two separate powers is identical.
 

 With these observations as a basis we must determine what the legislature meant by providing that the order of the commission must issue within sixty days after completion ©f the "hearing” on said petition. The principles of law involved in this case were reviewed and set forth in
 
 Norwegian Nitrogen Products Co. v. United States
 
 (1933), 288 U. S. 294, 317, 53 Sup. Ct. 350, 77 L. Ed. 796. In the opinion in that case Mr. Justice Cardozo, speaking for the court, reviewed, the whole matter with thoroughness and at length. While in that case the court was dealing with a body which was advisory rather than with one which had power to ordain, the principles laid down are generally applicable. . The tariff commission was a fact-finding body as is the Public Service Commission in the exercise of the powers conferred upon it by sec. 194.23, Stats. After reviewing the background of the Commerce Act and analyzing the statute, the court concludes as follows:
 

 “We are not unmindful of cases in which the word ‘hearing’ as applied to administrative proceedings has been thought to have a broader meaning. All depends upon the context. There is no denial of the power of congress to lay bare to the business rivals of a producer and indeed to the public generally every document in the office of this commission and all the information collected by its agents. The question for us here is whether there was the will to go so far. The answer will not be found in definitions of a hearing lifted from their setting and then applied to new conditions. The answer will be found in a consideration of the ends to- be achieved in the particular conditions that were expected or foreseen. To know what they are, there must be recourse to all the aids available in the process of construction, to history and analogy and practice as well as to the dictionary. Much is made by the petitioner of the procedure of the interstate commerce commission when regulating the conduct or the charges of interstate carriers, and that of the public service commissions
 
 *317
 
 of the states when regulating the conduct or the charges of public service corporations. The tariff commission advises;, these others ordain. There is indeed this common bond that all 'alike are instruments in a governmental process which according to the accepted classification is legislative, not judicial. . . . The Commerce Act, as it stands today, and kindred statutes in the states, are instinct with the recognition of a duty to give a hearing of such a kind that the courts will understand why a commission has acted as it has if their supervisory powers are afterwards invoked for enforcement or revision. No such inference is to be drawn from the act before us now.”
 

 Sec. 194.13, Stats. 1943, provides : “Orders and determinations made pursuant to this chapter shall be subject to review in the manner provided in chapter 227.”
 

 This section was not in force at the time of the commencement of this action on May 25, 1943. Prior to the enactment of ch. 227, Stats., by ch. 375, Laws of 1943, orders made under the provisions of ch. 194, Stats., were subject to review in accordance with the provisions of ch. 196, Stats. Tn this case therefore we have no occasion to consider the effect of sec. 227.20 (1), Stats., which provides:
 

 “. . . The court may affirm the decision of the agency, or may reverse or modify it if the substantial rights of the appellant have been prejudiced as a result of the administrative findings, inferences, conclusions or decision being :
 

 “ (a) Contrary to constitutional rights or privileges,” etc.
 

 This section did not become effective until July 2, 1943, and does not by its terms apply to pending actions.
 

 A consideration of sec. 194.23 (4), Stats., discloses the intention of the legislature. The proceedings were to be concluded within sixty days and therefore are summary in character. In the event of failure to issue its order within that time, the petition was deemed to be granted. The time within which the decision was to be made was to be extended only when the applicant agreed to an extension of time in writing. In the exercise of the legislative function under this
 
 *318
 
 section, the commission is required to do no more than to grant such a hearing as is generally accorded prior to the exercise of legislative power, such for instance as is accorded by legislative committees which have before them proposed legislation.
 

 It is considered that having in.mind the purpose of the statute, the language of the statute clearly indicates that the legislature intended that the commission should accord an applicant for a license as a common motor carrier a prompt hearing and issue its order within the time specified. That is indicated by the fact that the legislature provided that unless the time for hearing was extended upon the written consent of the applicant, the failure of the commission to make an order within the time specified should operate to give the applicant a direct legislative license in accordance with its application. The question of whether the applicant should be granted a license is a pure question of fact under the statute. If it appears upon the hearing that the conditions which exist create a situation where public convenience and necessity will be served by granting the petition, it is the duty of the commission to grant it.
 
 United Parcel Service v. Public Service Comm.
 
 (1942) 240 Wis. 603, 4 N. W. (2d) 138. No question of law being involved the legislature was m> doubt of the opinion that there was no need of postponing the decision in order to permit parties to file briefs. At the close of the hearing with the evidence all in the matter could be as well argued then as at any time later.
 

 From all these considerations we arrive at the conclusion that the word “hearing” as used in sec. 194.23 (4), Stats., refers to the time when the commission has concluded the taking of evidence. If the procedure followed in this case is proper, then the whole intent and purpose of the legislature to provide a hearing somewhat summary in character and to require the commission to make and file its order promptly will be frustrated and the trial court correctly
 
 so
 
 held.
 

 
 *319
 
 In this case the making of the order was delayed three months. It did not become final until seven and one-half months after the hearing closed. At the time the commission made its order, which is sought to be reviewed in this proceeding, it had no jurisdiction to make the order. When the order was made on December 18, 1942, under the terms of the statute, the appellant had already received a direct legislative grant of a license in accordance with its application. The making of that grant cannot be reviewed by this or any other court for the reason that it is a legislative act done in the exercise of the power granted to- the legislature by the constitution and therefore not subject to court review. There is no provision in the statute which indicates that the commission in a proceeding which results in the grant of a legislative license has any power or authority by way of rehearing or otherwise to set aside the legislative grant.
 

 The conclusion we have reached in this case makes it unnecessary to consider other questions sought to be raised relating to the sufficiency of the evidence and other like matters.
 

 By the Court.
 
 — Judgment affirmed.